UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA,<br>Plaintiff,<br>-against-<br>IBRAHIM KURTI,<br>Defendant. | 02 CR. 1014 (LAP)<br>ORDER |
|---|---|

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Ibrahim Kurti's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 165), based on the threat he faces of contracting COVID-19. Defendant has less than a year remaining on a 23-year sentence imposed following his conviction for participation in international ecstasy and marijuana trafficking conspiracies. Because Defendant has refused to be vaccinated against COVID-19 when the Bureau of Prisons ("BOP") offered him the opportunity, the Court finds, as set out below, that he has not demonstrated "extraordinary and compelling conditions warranting release" under the statute, and, in any event, early release is not warranted by the Section 3553(a) factors. Accordingly, his motion is denied.

## I. Background

Between 1999 and 2002, Ibrahim Kurti was an international ecstasy and marijuana trafficker responsible for opening a new trans-Atlantic supply route and bringing hundreds of thousands of ecstasy

pills--between 368,500 and 548,500--into New York. Kurti sent family members, underlings, and others to Europe to acquire the drugs and bring them back to New York, where the ecstasy was distributed from Kurti's apartment. On one occasion, for example, Kurti recruited one of his lieutenants, Gabriel Rudovic, to travel to Europe with two kilograms of cocaine, which Rudovic used to buy 13,500 ecstasy tablets. Rudovic testified that Kurti made all the plans, instructing him to travel to Germany to sell the cocaine and then to travel to Holland to pick up the ecstasy from Kurti's supplier. While in Holland, Rudovic also met with other underlings sent to Europe by Kurti, who were given ecstasy to transport back to the United States. Rudovic was arrested en route to deliver the drugs to Kurti but resumed working with Kurti after he completed a term of imprisonment in Belgium. (See generally Ex. A to Letter from Andrew Jones, dated June 4, 2021, 2004 Sentencing Transcript [dkt. no. 169-1] ("2004 Sent. Tr."), at 3–7.)

During this same time, Dave Zane, who had once been Kurti's supplier, now became a customer. At a Fatico hearing in 2004, two of Zane's runners who picked up ecstasy from Kurti on numerous occasions testified about their dealings with Kurti. Jason Smith testified that from March 2000 to October 2000, he picked up between 150,000 and 300,000 pills from Kurti's apartment. Justin Sabo testified that he picked up between 75,000 and 105,000 from Kurti from late 1999 through early 2002. (See 2004 Sent. Tr., at 5.)

In short, Kurti was a large-scale ecstasy and marijuana supplier, who managed a sizeable organization and used violence and threats of violence in support of his trafficking operation. Kurti supervised at least five to eight underlings. These subordinates, some of whom were referred to as "soldiers," performed a variety of tasks related to Kurti's narcotics trafficking. For example, in 1999, Kurti's soldiers assisted Kurti as he robbed another drug dealer. During the robbery, Kurti ordered two of his men to hold the drug dealer down as Kurti hit him. After Kurti robbed the dealer of a large amount of ecstasy, one of Kurti's soldiers--apparently in an effort to protect Kurti--brandished a 9mm pistol and aimed it at an associate of the drug dealer they had just robbed. Kurti also kept numerous weapons in the apartment he used to distribute the drugs. (See generally 2004 Sent. Tr., at 7–10.)

In 2003, Kurti pleaded guilty pursuant to a plea agreement to a two-count Information charging him with participating in ecstasy and marijuana trafficking conspiracies, both in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). In 2004, the Court held a Fatico hearing, after which it found that (i) Kurti was responsible for trafficking in at least 240,000 ecstasy pills and 200 kilograms of marijuana,[1] (ii) he possessed firearms during the commission of the

[1] Under the 2002 Guidelines, 240,000 pills was the minimum number the Court needed to find to trigger offense level 38, the maximum available base offense level. At the initial sentencing in 2004, the (continued on following page)

drug trafficking offenses, and (iii) that he was a manager within the drug trafficking conspiracies. (2004 Sent. Tr., at 5-9.) The resulting Guidelines calculation resulted in a total offense level of 40. (Id. at 12.) Because Kurti was in criminal history category III, the Guidelines sentencing range was 360 months to life, and he was sentenced to 360 months' imprisonment under the then-mandatory Guidelines. (Id. at 12, 15.)

In 2012, Kurti was resentenced following a remand from the Second Circuit to correct a technical error in the original sentence and for resentencing in light of the subsequently-decided United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). See United States v. Kurti, 427 F.3d 159, 164 (2d Cir. 2005). At resentencing, the Court made the same factual findings that it had previously, and the now-advisory Guidelines range was again 360 months to life. (Ex. B to Letter from Andrew Jones, dated June 4, 2021, 2012 Resentencing Transcript ("Resentencing Tr."), at 15-17.) Ultimately, the Court imposed a total sentence of 276 months, or 23 years, of incarceration. (Id. at 35.) The Court explained this downward variance in part because in the years since the initial sentencing, Kurti had "changed markedly

(continued from previous page)
Court stated it found credible the testimony from three witnesses that put the actual number of pills imported at between 368,500 and 548,500. (Ex. A at 5, 7.)

in attitude and demeanor" and "taken advantage of the educational and other opportunities available to him" while incarcerated. (Id. at 34-36.)

Kurti has now served about eighteen and a half years of his 23-year sentence. With good time credit, his projected release date is July 2, 2022.

## A. Defendant's Motion

Kurti filed a request for compassionate release with the Bureau of Prisons on August 6, 2020. The request was denied on August 21, 2020.

On December 4, 2020, Kurti filed a pro se motion with the Court seeking compassionate release and a reduction of his sentence to time served. (Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), dated Dec. 4, 2020 ("Def. Mot.") [dkt. no. 165].) Kurti argues that the chance that he will contract COVID-19 in prison presents an "unprecedented risk" to his health and therefore constitutes an extraordinary and compelling basis justifying relief. He further argues that relief is warranted because his scholastic achievements while incarcerated have provided him the "knowledge and skills to enable him to pursue a different life [from that] he led prior to his imprisonment in 2002." (Def. Mot. at 35-36.)

Regarding the Section 3553(a) factors, Kurti incorporates his arguments about the threats posed by COVID-19, describes himself as a

"non-violent offender," and argues there is no benefit to his continued incarceration because "[a]ny lesson he was to learn from incarceration is, by now after more than eighteen years in prison, learned." (Id. at 37.)

## II. Applicable Law

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018). Under that provision, the Court may reduce Defendant's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant Guidelines policy statement counsels that a reduction also is not proper unless "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

Under the First Step Act, the Court may exercise its "discretion in determining what are extraordinary circumstances." United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020). But a court's finding such circumstances merely permits a defendant's release--it does not mandate it. See, e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. Jan. 8, 2020); United States v. Israel, No. 05-CR-

1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019). Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction." United States v. Lisi, 440 F. Supp. 3d 246, 249 (S.D.N.Y. Feb. 24, 2020).

If the Defendant establishes extraordinary or compelling circumstances, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include, inter alia, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." Id. § 3553(a)(1)-(2).

## III. Discussion

Defendant has not proffered any reason why he is more at risk from COVID-19 than any other inmate. He bases his motion on his lack of complete control over all of the circumstances of his living conditions. That lack of control is applicable to any inmate and thus cannot constitute "extraordinary and compelling circumstances warranting release" under the statute.

What Defendant did have control over, however, was whether to receive a vaccine that would dramatically reduce his risk of contracting the virus and reduce the risk that, if he did so, he

would suffer a severe illness. As the Government points out in its papers, Defendant was offered the Moderna vaccine in February of 2021 but refused it. (See Ex. C to Letter from Andrew Jones, dated June 4, 2021, Defendant's Medical Records, at 22-23.) Judges in this District, and others, have repeatedly held that a defendant who refused a COVID-19 vaccine "cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine." United States v. Bullock, 18 Cr. 528 (JMF), 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021). This is because by "declining vaccination . . . [Defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction." Id. (quoting United States v. Lohmeier, No. 12 Cr. 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021)); United States v Graves, 15 Cr. 509 (CS) (S.D.N.Y. Mar. 15, 2021) ("It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to [him].") (quoting United States v. Gonzalez Zambrano, No. 18 Cr. 2000, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021)). The Court joins those and other courts in finding that a defendant who unreasonably declines a vaccination cannot establish "extraordinary and compelling circumstances warranting release" on account of COVID-19.

In any event, even if Defendant had established such circumstances, the Court would not exercise its discretion to grant early release to this Defendant. Defendant managed a trans-Atlantic drug trafficking operation that brought upwards of 550,000 ecstasy pills into New York, wreaking untold suffering on his fellow New Yorkers. He possessed multiple firearms while trafficking in narcotics and directed and participated in the violent robbery of a rival drug dealer. Any early release of this Defendant would contravene the sentencing requirements that he receive adequate punishment for this most serious crime.

## IV. Conclusion

For the reasons set out above, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (dkt. no. 165) is denied.

The Clerk of the Court shall mail a copy of this order to Defendant.

SO ORDERED.

Dated: New York, NY
July 7, 2021

Loretta A. Preska
Loretta A. Preska
Senior United States District Judge